UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DANNY R. RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00165-JRS-DLP |
| | ) | |
| CORIZON HEALTH, | ) | |
| CHAVEZ, | ) | |
| DENNING, | ) | |
| WEXFORD HEALTH SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' DR. CHAVEZ
AND CORIZON'S MOTION FOR SUMMARY JUDGMENT**

**I. Background**

Plaintiff Danny Richards bring this action pursuant to 42 U.S.C. § 1983. Mr. Richards alleges that while he was incarcerated at the Wabash Valley Correctional Facility (Wabash Valley), defendants Dr. Chavez and Dr. Denning failed to adequately treat his medical conditions, including complaints of severe headaches, episodes of fainting, loss of appetite, trouble sleeping, and his need for assistance walking and being ambulatory. He also alleges that defendants Wexford and Corizon have a policy of trying to save money rather than provide medical care to inmates. The Court screened his second amended complaint and permitted his Eighth Amendment claims against the defendants Dr. Chavez and Dr. Denning and his policy and practice claim against Wexford and Corizon to proceed. Dkt. 24.

Two of the four defendants - Dr. Chavez and Corizon - now move for summary judgment on Mr. Richard's claims arguing that he failed to exhaust his administrative remedies against these individuals as required by the Prison Litigation Reform Act (PLRA) before filing this lawsuit.

## II. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Here, Mr. Richards filed two responses in opposition to summary judgment. Dkt. 54; dkt. 57. Even taking these responses together, they fail to comply with Local Rule 56-1 which requires a section labeled "statement of material facts in dispute. L.R. 56-1(b). Neither response includes

such a section. Dkt. 54; dkt. 57. Rather, as discussed in footnote 1 below, Mr. Richards simply accuses Mr. Wellington, Grievance Specialist at Wabash Valley, of filing a fraudulent affidavit.

It is "well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). Whether the Court holds pro se litigants to the consequences of violating the Court's Local Rules is a matter of discretion. *Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir. 2016) (holding that district courts are not required to hold pro se litigants to the potential consequences of their failure to comply with the Local Rules and can instead take "a more flexible approach," including by ignoring the deficiencies in their filings and considering the evidence they submit). While Mr. Richards did not comply with Local 56-1, a "flexible approach" to compliance with the Local Rules is warranted here. The often harsh consequence for failure to comply with Local Rule 56-1 - concession of the defendants' version of events - is inappropriate for this motion given that (1) the issue of exhaustion is a relatively straightforward issue from a factual perspective; and (2) Mr. Richards's position is clear from his filings in that he simply provides legal argument that all of his medical claims should be considered exhausted. Also weighing in favor of a flexible approach is that the defendants' reply reveals that they clearly understand Mr. Richards's position and the facts he believe are in dispute; thus the defendants are in no way prejudiced by Mr. Richards's failure to include a "Statement of Material Facts in Dispute" section in his brief or by any of his other failures to comply with Local Rule 56- 1. For these reasons, a flexible approach to Mr. Richards's compliance with the Local Rules is warranted.

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the

PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91; *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Richards. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate

is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

"This circuit has taken a strict approach to exhaustion." *Wilborn v. Ealey,* 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes, at least as long as it is actually available to the inmate." *Id.*

### III. Statement of Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Richards as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Wabash Valley has an offender grievance program pursuant to Indiana Department of Correction (IDOC) policy. This process is set out in IDOC Policy and Procedure 00-02-301. Through the offender grievance process, offenders may grieve their concerns and complaints of individual staff conduct, including complaints about medical care. Offenders are made aware of the grievance process during orientation and they have access to the offender grievance policy in the law library. Dkt. 46-1, ¶ 7; dkt. 46-2.

Thomas Wellington (Wellington) is the Grievance Specialist at Wabash Valley. Dkt. 46-1, ¶ 2. In this position, he oversees the grievances process at Wabash Valley, including grievances filed by offenders relating to medical issues. Mr. Wellington has been in this job since February 2018 and has access to offender grievance records maintained by Wabash Valley, which include the computer records of offender grievances filed. *Id.*, ¶¶ 2, 4. He is also knowledgeable regarding

the process and requirements of the IDOC Offender Grievance Process and its use and application at WVCF. *Id*. ¶ 6.

The grievance process has three steps. *Id*., ¶ 8.

<u>Step One:</u>

The first step is an informal attempt to solve a problem or address a concern. Before filing a grievance, an offender is required to attempt to resolve a complaint informally and utilize State Form 52897. *Id*. ¶ 9. The offender must attempt to resolve the problem or complaint with the staff in question within five business days from the date of receiving the Informal Grievance Form. The completed Informal Grievance shall be evidence from the offender that he attempted to resolve the problem informally. If the informal complaint is not resolved by the staff person within ten business days of the day the offender first approached the staff person, the offender shall be permitted to submit a formal grievance form. *Id*.

If there is no resolution of the informal complaint and staff documents their account of the situation with signature and date, and the offender disagrees or is dissatisfied with the staff response, the offender must return the completed form to the Grievance Specialist and document with a signature that he is either satisfied or dissatisfied with the outcome. *Id*. ¶ 10.

<u>Step Two:</u>

If the offender is dissatisfied with the outcome of the informal grievance, he may file a formal grievance. The time to submit a formal grievance on State Form 45471 begins on the earliest of these days and ends five business days later:

    (1)    The day the staff member tells the offender that there will be no informal resolution;

    (2)    The day that the offender refuses an informal resolution offered by staff; or

(3) The tenth business day after the offender first seeks an informal resolution from staff. *Id.* ¶ 11.

An offender wishing to file a formal grievance must submit the Formal Grievance no later than 20 business days from the date of the incident giving rise to the complaint or concern to the Grievance Specialist. *Id.* ¶ 12.

The completed Formal Grievance must be submitted to the Grievance Specialist within five business days of receiving the form. *Id.* ¶ 13. The Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form. If an offender does not receive either a receipt or a rejected form from the Grievance Specialist within seven working days of receiving the formal grievance form, the offender shall immediately notify the Grievance Specialist of that fact (retaining a copy of the notice) and the Grievance Specialist shall investigate the matter and respond to the offender's notification. *Id.*

Each completed Formal Grievance must show how the offender tried to informally resolve the complaint or concern. *Id.* ¶ 14. The Grievance Specialist may reject the Formal Grievance and return it to the offender unfiled if this condition is not met. The Grievance Specialist may also reject the Formal Grievance and return it to the offender if it is clear on the face of the Formal Grievance that the form was not submitted within the time limit. *Id.*

Upon receipt of the grievance response from the Grievance Specialist, the offender shall be responsible for reviewing the response and determining whether the response adequately addresses the issues in the grievance. *Id.* ¶ 15.

<u>Step Three:</u>

The offender shall be permitted to appeal the response to the Department Offender Grievance manager if the offender disagrees with the formal response at the institutional level. *Id.*

Exhaustion of the offender grievance process requires an offender to timely complete all steps of the grievance procedure. Dkt. 46-2.

Mr. Richards's Grievance History:

Dr. Chavez was employed by Corizon at Wabash Valley from April 25, 2016 to March 31, 2017. Dkt. 46-1, ¶ 16. Wexford took over for Corizon on April 1, 2017. *Reece v. Indiana Dep't of Correction*, 2:17-cv-534-WTL-MJD, 2017 WL 5889722 (S.D. Ind. Nov. 29, 2017).

Mr. Richards filed an informal grievance on February 8, 2018, complaining that a new doctor discontinued his prescription for Neurontin. Dkt. 46-3, p. 7. Mr. Richards filed a formal grievance on February 23, 2018, complaining that his prescription for Neurontin was wrongfully discontinued by the new doctor whom he identifies at Dr. Denning. *Id.*, p. 5. It was assigned grievance number 101028. Kim Hobson replied to Mr. Richards's formal grievance on March 16, 2018, stating that he was provided medicine for ulcerative enterocolitis and his prescription for Neurontin was not renewed based on the medical providers objective clinical findings. *Id.*, p. 11. Mr. Richards disagreed with the response to his formal grievance. *Id.*, p. 12.

Mr. Richards filed a grievance appeal on February 23, 2018. *Id.*, p. 17. Warden Brown responded to Mr. Richards's appeal on April 11, 2018, stating that Dr. Denning was correct in her response and denied the appeal. *Id*. Mr. Richards disagreed with the appeal response. The final level of appeal was also denied. *Id.*, pp. 22-23.

Mr. Wellington maintains a folder for each offender containing any informal grievances submitted, as well as formal grievances submitted that were rejected and returned to the offender for violations of the Grievance Policy. Dkt. 46-1, ¶ 19. This folder does not contain any rejected and returned grievances for Mr. Richards during his incarceration at Wabash Valley. *Id*.

## IV. Discussion

The defendants argue that Mr. Richards failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims against Dr. Chavez and Corizon. Dkt. 46. In response, Mr. Richards states that the defendants' motion for summary judgment is moot because defendants Denning and Wexford withdrew their motion for summary judgment based on the affirmative defense of failure to exhaust. Dkt. 54. He also states that the defendants' argument that he did not include or name Dr. Chavez or Corizon in his grievances is "pure nonsense" and that any complaint about the medical care he was receiving necessarily includes Corizon. *Id.*, p. 2.[1] Mr. Richards argues that the medical grievance he filed in 2018 substantially complied with the grievance requirement with respect to his claims against Dr. Chavez and Corizon and as such he is excused from full compliance. *Id.*

The material evidence submitted by Dr. Chavez and Corizon is undisputed. Mr. Richards filed a grievance about a problem that occurred in 2018 when his prescription for Neurontin was discontinued. Dkt. 46-3.[2] While Mr. Richards is not required to specifically name the individual responsible for his problem in the grievance, the event he is complaining about – the discontinuance of his prescription – did not occur until almost a year after Dr. Chavez and Corizon stopped providing medical services at Wabash Valley. The purpose of exhaustion is to put prison

---

[1] Mr. Richards accused Mr. Wellington of filing a false affidavit based on Mr. Wellington's assertions that Mr. Richards did not file any grievances against Corizon. Dkt. 54, p. 3. However, Mr. Wellington's affidavit states that Mr. Richards did not file any grievance while incarcerated at Wabash Valley regarding his medical care by Dr. Chavez prior to 2018. Dkt. 46-1. Moreover, grievance number 102585 which Mr. Richards references, was filed after he filed the complaint in this action.

[2] The defendants state that Mr. Richards's grievances at issue also included complaints about the care he was receiving for his ulcerative enterocolitis. However, Mr. Richards does not include any complaints about the care he was receiving for this condition. Rather, grievance number 101028 focused on the discontinuation of his prescription for Neurontin.

officials on notice and give them the opportunity to address the prisoner's claims internally, before litigation is necessary. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). More specifically, the purpose of the IDOC's grievance policy is to "provide an administrative process where offenders committed to the Indiana Department of Correction may resolve concerns and complaints relating to their conditions of confinement." Dkt. 46-2, p. 1. The policy requires that a grievance relate to only one event or issue and shall explain how the situation or incident affected the offender. *Id.*, p. 17. The IDOC policy does not define the level of detail that must be included in a grievance. Where the administrative policy is silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002); *see also Wilder v. Sutton*, 310 Fed. Appx. 10, 15, 2009 WL 330531, *4 (7th Cir. 2009) ("prisoners must only put responsible persons on notice about the conditions about which they are complaining").

Filing a grievance about an event that occurred almost a year after Dr. Chavez and Corizon stopped providing medical care and services at Wabash Valley does not put these medical providers on notice of any claim asserted against them. Dr. Chavez and Corizon were not responsible for his medical care when his prescription was discontinued in 2018. As such, he did not exhaust his administrative remedies as to Dr. Chavez and Corizon based on grievance number 101028. Mr. Richards's argument that his grievance about medical care necessarily included any medical care he received, however remote in time, is without merit.

For the foregoing reasons, Mr. Richards did not exhaust his available administrative remedies before bringing this action, as is required under the PLRA, as to Dr. Chavez and Corizon. As a result, the Court must dismiss the claims against Dr. Chavez and Corizon without prejudice. *See Ford*, 362 F.3d at 401 (noting that the exhaustion requirements "are enforced . . . by dismissing

a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending"); *Pozo*, 286 F.3d at 1024 ("Failure to [exhaust under the PLRA] bars, and does not just postpone, suit under § 1983."); *see also Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) ("[D]ismissals under § 1997e(a) for failure to exhaust must be without prejudice.").

## V. Conclusion

For the reasons set forth above, defendants' Dr. Chavez and Corizon's motion for summary judgment, dkt. [45], is **granted**. Mr. Richards's claims against these defendants are **dismissed without prejudice**.

No partial judgment shall enter at this time.

The only remaining defendants in this action are Dr. Denning and Wexford. **The clerk is instructed** to update the docket to reflect that defendants Dr. Chavez and Corizon have been **dismissed** from this action.

**IT IS SO ORDERED.**

Date: 11/1/2018

*[signature]*

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DANNY R. RICHARDS
866216
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com