UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANNY R. RICHARDS, )<br>  )<br>           Plaintiff, )<br>  )<br>     v. )<br>  )<br> JACKIE WEST-DENNING, *et al.* )<br>  )<br>           Defendants. ) | No. 2:18-cv-00165-JPH-DLP |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Danny R. Richards, an inmate in the Indiana Department of Correction, filed this 42 U.S.C. § 1983 action alleging that he received constitutionally inadequate healthcare at Wabash Valley Correctional Facility.

Mr. Richards has filed multiple amended complaints, and several claims and defendants have been dismissed at screening or resolved by summary judgment. His remaining claims are that (1) Dr. Jackie West-Denning was deliberately indifferent for failing to provide pain medication; (2) Dr. West-Denning was deliberately indifferent to the pain caused by side effects of his insulin treatment; (3) Dr. West-Denning was deliberately indifferent for not referring him to an outside specialist; and (4) Wexford of Indiana's policy of providing less expensive treatments when other, more effective treatments are available prevented him from getting effective pain medication. Dr. West-Denning and Wexford have moved for summary judgment. For the reasons below, the defendants are entitled to summary judgment on all claims.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R.

1

Civ. P. 56(a). A party must support any asserted undisputed (or disputed) fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit. *Williams v. Brooks*, 809 F.3d 936, 941−42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. Factual Background

Dr. West-Denning treated Mr. Richards from December 19, 2017, to July 17, 2018. Mr. Richards had been previously diagnosed with ulcerative colitis, gastroesophageal reflux disease, chronic obstructive pulmonary disease, and elevated A1c levels (indicative of diabetes).

Another doctor had prescribed him Neurontin for pain relief, Pepcid for reflux, and several other medications. Dkt. 192-1, ¶ 4 (Dr. West-Denning affidavit).

At Mr. Richards's first visit with Dr. West-Denning on December 19, 2017, she noted his "alarmingly high" A1c level of 12.5. *Id.*, ¶ 5. An A1c level of 5 is normal, a level of 6 indicates pre-diabetes, and a level over 7 indicates diabetes. *Id.* Dr. West-Denning ordered insulin injections and daily blood glucose tests, as well as one-time blood tests and urinalysis. *Id.* She also ordered a special diabetic diet and diabetic snack. *Id.*, ¶ 6. According to Mr. Richards, Dr. West-Denning questioned why Mr. Richards was receiving Neurontin, which is used to treat nerve pain. Dkt. 196, ¶ 9. But she did not discontinue his prescription at this time.

Dr. West-Denning treated Mr. Richards again on January 18, 2018. Dkt. 192-1, ¶ 7. Mr. Richards complained about side effects from his insulin shots and asked if he could reduce the dosage or change the blood glucose threshold for when he had to take them. Dkt. 196, ¶ 15. But Dr. West-Denning told Mr. Richards it would be better for him to comply with his prescription and that the side effects would subside in 4 to 8 weeks. *Id.*, ¶ 16; dkt. 192-1, ¶ 7. Mr. Richards questioned the doctor's advice and reiterated the unpleasant side effects. Dkt. 196, ¶ 17. According to Mr. Richards, Dr. West-Denning told him, "You're a big boy in a big man's prison. Deal with it." *Id.*, ¶ 18. Mr. Richards responded, on his way out the door, by criticizing Dr. West-Denning for not easing him onto the insulin treatments. *Id.*, ¶ 21.

Dr. West-Denning next treated Mr. Richards on February 13, 2018. Dkt. 192-1, ¶ 8. Mr. Richards again complained about the side effects from insulin, but Dr. West-Denning redirected the conversation to his A1c levels and blood glucose readings. Dkt. 196, ¶¶ 26−27. Dr. West-Denning told Mr. Richards that she was ending his Neurontin prescription and adding sulfasalazine to treat the ulcerative colitis, as well as suppositories for pain relief. Dkt. 192-1, ¶ 8.

The sulfasalazine prescription was intended to treat the underlying ulcerative colitis symptoms, not just the resulting pain. *Id.*, ¶ 10. Dr. West-Denning ended the Neurontin prescription based in part on direction from the Indiana Department of Correction regarding pain treatment. *Id.* Neurontin is an oft-trafficked drug that has recently been limited in prisons. Dkt. 192-2, ¶ 22 (Dr. Samuel Byrd affidavit). Mr. Richards alleges that he complained at the February 13 visit of nerve pain in his "anus area." Dkt. 196, ¶ 30. Dr. West-Denning then put on a pair of latex gloves and told Mr. Richards to remove his pants for a rectal exam. *Id.*, ¶ 31. Mr. Richards refused, complaining that the room was unsanitary and that both custody officers and other inmates could see him. *Id.*, ¶ 32. Dr. West-Denning told him that he lost his right to privacy and cleanliness when he came to prison. *Id.*, ¶ 33.

Dr. West-Denning treated Mr. Richards again on February 20, 2018. Dkt. 192-1, ¶ 9. She added a prescription for zinc oxide cream to treat symptoms of his ulcerative colitis. *Id.* Dr. West-Denning says Mr. Richards demanded Neurontin and told her she "must be some kind of stupid" for ending the prescription. *Id.* Mr. Richards says he never demanded a specific medicine but only wanted an explanation for why she changed his treatment plan. Dkt. 196, ¶ 41. He also denies that he ever became agitated, boisterous, or threatening. *Id.*, ¶ 52.

Dr. West-Denning next treated Mr. Richards on March 13, 2018. Dkt. 192-1, ¶ 10. Mr. Richards told her that he was experiencing more than a dozen bowel movements per day, as he had been since at least 2010. *Id.* He asked to replace his sulfasalazine prescription, but Dr. West-Denning told him to allow at least eight weeks for the medicine to take full effect. *Id.* She nevertheless ordered a prescription for Balsalazide in addition to the sulfasalazine. *Id.* She also tried to prescribe Prednisone for Mr. Richards's ulcerative colitis, but he refused it. *Id.*; dkt. 196,

¶ 57. Mr. Richards states that he accused Dr. West-Denning of not properly documenting his pain complaints and lying by stating that he was demanding Neurontin. Dkt. 196, ¶ 54.

Because of Mr. Richards's behavior during the March 13, 2018, visit, Dr. West-Denning joined with Health Services Administrator Kim Hobson and Director of Nursing Regenia Robinson to create an agreed care plan for Mr. Richards. Dkt. 192-1, ¶ 11. Instead of doctor visits, Mr. Richards would see a nurse each month. *Id.* If Mr. Richards reported a change of symptoms, he would be scheduled for a doctor visit. *Id.*

On March 27, 2018, Mr. Richards saw Dr. West-Denning with a complaint of additional bowel movements, plus mucus and blood in his bowels. *Id.*, ¶ 12. He reported that the zinc ointment and suppositories provided relief but complained that the prescribed enemas felt like fire. *Id.* Dr. West-Denning prescribed a round of antibiotics, steroids to calm Mr. Richards's inflammation, and a stool stabilizer. *Id.*, ¶¶ 12−13. She also prescribed Trileptal, an anti-epileptic medication approved for the treatment of chronic pain. *Id.*, ¶ 13. Mr. Richards asserts that this was the first pain medication Dr. West-Denning provided him. Dkt. 196, ¶¶ 60−61. But he does not dispute Dr. West-Denning's assertion that she provided him suppositories for pain relief beginning February 13, 2018—shortly after the Neurontin prescription ended. Dkt. 192-1, ¶ 8; *see* dkt. 196-1 at 24 (last Neurontin dose given February 7, 2018).

On April 5, 2018, Mr. Richards filed the complaint that initiated this action. Dkt. 2.

On May 14, 2018, the Court screened Mr. Richards's amended complaint, in which he named Dr. West-Denning as a defendant for the first time. Dkt. 12. Hours later, Dr. West-Denning entered a provider note in Mr. Richards's records, stating that he had refused to finish his antibiotic prescription and that "[i]t is difficult to treat him when he refuses medication and visits." Dkt. 196-1 at 73−74. Mr. Richards denies that he failed to finish his antibiotics and accuses

5

Dr. West-Denning of falsifying his medical records. Dkt. 205 at 14−15. Notably, Mr. Richards conducted a hunger strike from April 7 through April 10, 2018, the last four days of his antibiotic prescription. Dkt. 192-3 at 45−54.

On May 22, 2018, Dr. West-Denning noted that she discontinued several diabetes medications Mr. Richards had refused to take. Dkt. 192-3 at 11. Mr. Richards denies that he stopped using these medications and accuses Dr. West-Denning of lying. Dkt. 196, ¶¶ 88−89.

Mr. Richards's final visit with Dr. West-Denning was July 17, 2018. Mr. Richards did not request to see a physician again until December 2018, when he was evaluated by Dr. Samuel Byrd.

### III. Discussion

To prevail on an Eighth Amendment claim based on deliberate indifference to serious medical needs, a plaintiff must show that (1) he suffered from an objectively serious medical condition and (2) the defendant knew about his condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Knight v. Grossman*, 942 F.3d 336, 340 (7th Cir. 2019). Negligence is not enough. *Knight*, 942 F.3d at 340. "A prison official is deliberately indifferent only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Because Wexford acted under color of state law by contracting to perform a government function—providing healthcare services to inmates—it is treated as a government entity for purposes of 42 U.S.C. § 1983 claims. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019). A successful claim against Wexford therefore must be based on a policy, practice, or custom that caused a constitutional violation. *Id.*; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690−91 (1978).

### A. Dr. West-Denning's Provision of Pain Medication

Mr. Richards received Neurontin through February 7, 2018. On February 13, 2018, Dr. West-Denning prescribed suppositories for rectal pain relief. Mr. Richards asserts that he told her he needed treatment for nerve pain—the kind Neurontin treats—because he had nerve damage in and around his rectum. Dkt. 196, ¶ 30. Dr. West-Denning then tried to examine Mr. Richards's rectum, but he refused. *Id.*, ¶ 31.

On February 20, 2018, Mr. Richards notified Dr. West-Denning that the suppositories were ineffective. *Id.*, ¶ 15 (asserting he told Dr. West-Denning that the suppositories "felt like someone poured gasoline up inside me and set me on fire"). Dr. West-Denning did not cancel the suppositories, which Mr. Richards was not required to use. *See* dkt. 192-1, ¶ 9. But she ordered zinc oxide cream and directed Mr. Richards to continue taking sulfasalazine, which she had prescribed only a week earlier to treat his ulcerative colitis symptoms, because it requires several weeks to take effect. *Id.*

On March 13, 2018, Dr. West-Denning recommended steroid treatment to control Mr. Richards's inflammation, but he refused it. *Id.*, ¶ 10. And on March 27, 2018, Dr. West-Denning prescribed Trileptal for pain relief. *Id.*, ¶ 13. Mr. Richards makes no complaint about the Trileptal, but he asserts that the suppositories were ineffective.

Dr. West-Denning asserts, and Mr. Richards does not dispute, that the Indiana Department of Correction implemented a policy restricting the prescription of Neurontin because it is commonly misused and trafficked. Dkt. 192-2, ¶ 22. No reasonable juror could find that Dr. West-Denning was deliberately indifferent for attempting to comply with this policy by trying other pain-relief methods for Mr. Richards and by trying to treat the ulcerative colitis causing his pain. Dr. West-Denning did not provide the specific medicine Mr. Richards wanted, but as he

7

acknowledges, he had no right to demand specific treatment. And she exercised medical judgment by attempting several other treatments that appeared to be good options to treat Mr. Richards's conditions. Accordingly, she is entitled to summary judgment on this claim.

### B. Dr. West-Denning's Order of Insulin Despite Side Effects

Mr. Richards describes intense pain and nausea after receiving insulin injections. He asserts that Dr. West-Denning was unsympathetic about his pain, telling him to "[d]eal with it" because he was "a big boy in a big man's prison." Dkt. 196, ¶ 18. Assuming as the Court must on summary judgment that Dr. West-Denning made this statement, it was not necessary, helpful or professional. But such a statement does not support Mr. Richards' claim in the absence of evidence showing that Dr. West-Denning disregarded a substantial risk of harm posed by a serious medical condition. Here, Mr. Richards has not designated evidence creating a genuine issue of material fact regarding Dr. West-Denning's medical treatment regarding the side effects from insulin.

To the extent Mr. Richards alleges Dr. West-Denning should have prescribed a lower dose of insulin or raised the blood glucose threshold for providing insulin injections, he has not provided evidence that would allow a jury to find in his favor. Mr. Richards's A1c levels were "alarmingly high." Dkt. 192-1, ¶ 5. And Dr. West-Denning believed that the negative side effects from insulin treatment would subside over time. Dkt. 196, ¶ 7. These side effects, though painful and unpleasant, were temporary. Diabetes is potentially fatal.

Moreover, Mr. Richards had control over whether he received any particular insulin injections. Indeed, he acknowledges that he refused insulin injections multiple times. Dkt. 196, ¶ 86 ("[Y]es there was a few days that plaintiff's physical health just wasn't up to receiving these shots but the medication records clearly prove that plaintiff took these insulin shots more often than not.").

Dr. West-Denning exercised her medical judgment by ordering swift and consistent insulin treatments and concluding that the efficaciousness of the treatment outweighed the side effects. She believed that the insulin treatments were medically necessary and that the negative side effects were likely to subside. Even if, as Mr. Richards alleges, she ordered unnecessary insulin, no jury could find based on this record that Dr. West-Denning was deliberately indifferent, not merely negligent. *Knight*, 942 F.3d at 340.

### C. Dr. West-Denning's Failure to Refer to an Outside Specialist

Mr. Richards's third amended complaint alleges that Dr. West-Denning should have sent him to an outside specialist to treat his gastroesophageal reflux disease. But his summary judgment filings focus almost entirely on his ulcerative colitis and the side effects from insulin injections. Mr. Richards does assert in his response to the defendants' summary judgment motion that the Pepcid prescribed for his gastroesophageal reflux disease interfered with his pulmonary disease and that he told Dr. West-Denning his "wheezing ha[d] increased" while on Pepcid. Dkt. 196, ¶ 42. Mr. Richards has not designated evidence from which a jury could find that Dr. West-Denning was deliberately indifferent for not sending Mr. Richards to an outside specialist to treat his gastroesophageal reflux disease.

### D. Wexford's Policy Regarding Pain Medication

Mr. Richards alleges in his third amended complaint that Wexford has a policy of withholding effective but expensive treatment. But he provides no evidence of any such policy, either formal or informal. The defendants' filings likewise reveal no such policy. Accordingly, Wexford is entitled to judgment as a matter of law.

## IV. Conclusion

The defendants' motion for summary judgment, dkt. [190], is **GRANTED**. Mr. Richards' motion for ruling on defendants' motion for summary judgment, dkt. [220], is **GRANTED** to the extent this Entry is issued today.

Because all claims have now been resolved, final judgment shall enter.

**SO ORDERED.**

Date: 8/3/2020

Distribution:

DANNY R. RICHARDS
866216
INDIANA STATE PRISON
Electronic Service Participant - Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

James Patrick Hanlon
United States District Judge
Southern District of Indiana